# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | | |
|---|---|---|
| EMMITT PRINCE, | ) | |
| Plaintiff, | ) | |
| vs. | ) | 7:19-cv-01854-LSC |
| CITY OF NORTHPORT, | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

### I. INTRODUCTION

Plaintiff Emmitt Prince ("Plaintiff" or "Prince"), a fifty-two year old African-American, brings this action against his employer, the City of Northport ("Defendant" or "Northport"). Prince asserts claims for race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981 brought pursuant to 42 U.S.C. § 1983. Prince also brings a claim against Northport for age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA").

Before the Court is Northport's Motion for Summary Judgment (doc. 16). This motion is fully briefed and ripe for review. For the reasons stated below, Northport's motion is due to be granted.

## II. BACKGROUND[1]

Prince began working for Northport in April 2002 as a laborer in the Public Works Department. In 2016, Prince applied for and was promoted to the position of Traffic Technician I. In this position, Prince was responsible for "[m]aintaining street signs, building signs," operating various equipment on trucks, such as pulleys, "grinding, painting," and helping Brad Akin ("Akin") as needed. (Doc. 18-1 at 69.) At that time, Akin held the position of Traffic Technician II. In late 2018, Akin was promoted to the position of Traffic Signal Technician, which created an opening for Traffic Technician II.

After Akin was promoted, Brooke Starnes ("Starnes"), the Director of Public Works, chose to make the Traffic Technician II position more technical. Northport had to rely on the Alabama Department of Transportation ("ALDOT") to service traffic cabinets, which was costly. Starnes believed that Northport should be able to handle this work within its own Traffic Department. In order to achieve this goal,

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties. *See Chavez v. Sec'y Fla. Dept. of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . . .")

Northport changed the qualifications for the Traffic Technician II position, requiring a heightened level of electrical knowledge. To assess an applicant's electrical knowledge, Starnes and Joey Olive ("Olive"), the Assistant Director of Public Works, developed a series of questions that would be asked during interviews to determine whether an applicant could use electrical equipment as well as read electrical schematics.[2] Additional requirements for Traffic Technician II listed in the written job description included one year of experience in electronics and the ability to read a voltmeter.

Prince applied for the Traffic Technician II position in December 2018. He listed previous experience on his application, which included work in his position as Traffic Technician I, and high school electrical classes, which he had taken at least thirty-three years ago. Prince did not have one year of experience in electronics. Jesse Hallman ("Hallman"), a twenty-seven-year-old Caucasian male, also applied for the open position. At that time, Hallman was employed by Northport as a Wastewater Operator. Hallman listed previous experience on his application, which included working with relevant electrical equipment, and an associate's degree in applied science with a focus in electrical technology. Consistent with Northport's

---

[2] While these interview questions were implemented for the first time in 2018, Northport continued to use the same questions in subsequent years during interviews for the Traffic Technician II position.

procedures for filling open positions, Northport's Civil Service Board evaluated potential applicants and allowed Prince, Hallman, and two other candidates to apply for the Traffic Technician II position. By permitting the candidates to apply, Northport's Civil Service Board certified that each was minimally qualified for the position. While four candidates were permitted to apply for the position, only three proceeded with the interview process.

The interviews were structured such that each applicant would be asked the same series of questions using an interview guide. This included eight standard interview questions, and five questions tailored to the technical job requirements of Traffic Technician II. The questions relevant to Traffic Technician II focused on the applicant's knowledge of electricity, including whether the applicant could distinguish between different colors on a wire sample; identify different settings on a voltmeter; measure ohms and determine continuity in a wire sample; utilize a tape measure; and determine the function of different wires on a diagram. Northport sought both external and internal applicants for the open position. Consistent with Northport's policies for jobs open to external candidates, the interview would represent 100% of a candidate's score.[3]

---

[3] Prince disputes this, stating that Northport should have considered seniority in calculating each candidate's score in addition to the interview. However, Northport followed its own policies and procedures for jobs that are posted externally, which Prince concedes, and Prince has presented no evidence to suggest that Northport deviated from its own policies and procedures.

All interviews were conducted by the same panel of interviewers: Starnes, Olive, Akin, and Joseph Rose ("Rose"), the Director of Human Resources. These interviewers were all Caucasian. During Prince's interview, he received scores of 27, 32, and 29 for an average score of 29.3.[4] These were the lowest scores of the three candidates who interviewed. Prince could not identify four of five symbols on a voltmeter. He did not demonstrate that he could measure the continuity of the wire sample, and he had difficulty identifying the function of wires in the diagram. Prince recognized that the interview had gone poorly, admitting as much to Akin and Starnes shortly thereafter.

During Hallman's interview, he received scores of 38, 51, and 46, for an average score of 45. These were the highest scores of the three candidates who interviewed. Hallman correctly identified all of the symbols on the voltmeter; measured the continuity of the wire sample; and identified the function of wires in the diagram. At Starnes's recommendation, Northport hired Hallman for the Traffic Technician II position because of his superior performance during the interview.

---

[4] Although there were four interviewers, each candidate received three scores, as Rose did not possess the technical knowledge to provide a score.

After Hallman was hired, he became Prince's supervisor. Prince testified that he had to train Hallman on certain nontechnical tasks, such how to build signs.

After Prince did not receive the promotion to Traffic Technician II, he asked Akin if it was due to his race and age. Prince states that Northport never had an African-American hold the position of Traffic Technician II. Akin passed along Prince's concerns, and ultimately Starnes sent a letter to Prince stating that the selected candidate had more experience in the electrical field, recent education in electronics technology, and a higher interview score. Starnes later testified that the reason Hallman was hired over Prince was because of his superior performance during the interview.

### III. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact[5] and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a

---

[5] A material fact is one that "might affect the outcome of the case." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence, but should determine whether there are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the nonmoving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory allegations and a "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving

party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (per curiam). Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## IV. DISCUSSION

Prince brings two types of claims against Northport. First, Prince asserts that he was discriminated against because of his race when he was denied a promotion to Traffic Technician II. Second, Prince asserts he was discriminated against because of his age when he was denied a promotion to Traffic Technician II. Northport has moved for summary judgment on both claims.

### A. Race Discrimination

Title VII prohibits, among other conduct, "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Title VII and § 1981 "have the same requirements of proof and use the same analytical framework." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). While Title VII and § 1981 utilize the same framework, "§ 1981 does not provide an

implicit cause of action against state actors; therefore § 1983 constitutes the exclusive federal remedy for violation[s] by state actors of the rights guaranteed under § 1981." *Bryant v. Jones*, 575 F.3d 1281, 1288 n.1 (11th Cir. 2009) (citing *Butts v. Cnty. of Volusia*, 222 F.3d 891, 984–95 (11th Cir. 2000)).

"[A] plaintiff may use three different kinds of evidence of discriminatory intent: direct evidence, circumstantial evidence or statistical evidence." *Standard*, 161 F.3d at 1330. Absent direct evidence of racial discrimination, such as specific statements made by the employer's representatives, a plaintiff may demonstrate circumstantial evidence of disparate treatment through the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248 (1981).[6] Under this framework, the aggrieved employee creates a presumption of unlawful discrimination by first establishing a *prima facie* case of discrimination. *See Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc). The burden then shifts to the employer "to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221 (citing *Burdine*, 450 U.S. at 253). If the employer proffers a

---

[6] "Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact without inference or presumption." *Carter v. City of Miami*, 870 F.2d 578, 581–82 (11th Cir. 1989). Because Prince has not offered any direct evidence of discrimination, the Court addresses his claims under the standards applicable to circumstantial evidence of discrimination. *See Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010).

legitimate, nondiscriminatory reason, the burden returns to the employee to prove that the employer's reason is a pretext for unlawful discrimination. *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008). Although the *McDonnell Douglas* framework is one way of showing discriminatory intent, it is not the only way to show discriminatory intent in a Title VII or § 1981 discrimination claim. *See Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). "[T]he plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.* As Title VII and § 1981 claims are analyzed in the same manner, the Court will address both claims together.

    1. Prima Facie *Case*

To establish a *prima facie* case of discrimination in the context of a failure to hire or promote claim, a plaintiff must show: (1) he is a member of a protected class, (2) he was qualified and applied for the position, (3) he was rejected, and (4) the position was filled by a person outside of his protected class. *See Vessels v. Atlanta Ind. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005) (per curiam) (citing *McDonnell Douglas*, 411 U.S. at 802). To establish that a plaintiff is qualified, he "need only show that he . . . satisfied an employer's objective qualifications." *Id.* at 769. The

plaintiff does not need to address the "relative qualifications" of other applicants as part of his *prima facie* case. *Walker v. Mortham*, 158 F.3d 1177, 1193 (11th Cir. 1998).

It is undisputed that Prince is a member of a protected class, that he applied for the position of Traffic Technician II and was rejected, and that the position was filled by a person outside of his protected class. Northport, however, contends that Prince was not qualified. Northport argues that Prince's poor performance during his interview established that he was not qualified for the position; however, this determination is subjective and cannot be used to show a candidate is not qualified at the *prima facie* stage. *See Vessels*, 408 F.3d at 769 ("[S]ubjective criteria have no place in the plaintiff's initial *prima facie* case."). Prince provides evidence that he was objectively qualified for the position because Northport's Civil Service Board permitted him to apply, certifying that he was minimally qualified. Viewing the facts in the light most favorable to the nonmoving party, Prince has established he was qualified for the position of Traffic Technician II, thus he has established a *prima facie* case of discrimination.

2. *Legitimate, Nondiscriminatory Reason*

As Prince has stated a *prima facie* case of discrimination, the burden shifts to Northport to provide a legitimate, nondiscriminatory reason for promoting Hallman instead of Prince. *See Lewis*, 918 F.3d at 1221 (citing *Burdine*, 450 U.S. at 253). The

burden at this stage "is exceedingly light." *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983). It is merely a burden of production, not a burden of proof. *Id.*

Northport states that it chose to promote Hallman instead of Prince because Hallman had relevant experience for Traffic Technician II and was the highest scoring candidate who interviewed for the position. Prince's average interview score was 29.3, which was the lowest of three candidates, compared with Hallman, whose average interview score was 45. This is sufficient for Northport to meet its burden of production at this stage.

### 3. *Pretext*

As Northport has articulated a legitimate, nondiscriminatory reason for its decision, "the burden shifts back to the plaintiff to produce evidence that the employer's proffered reason [is] a pretext for discrimination." *Alvarez*, 610 F.3d at 1264. A "plaintiff can show pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence,'" *Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (quoting *Burdine,* 450 U.S. at 256), such that a rational trier of fact could disbelieve the employer's proffered nondiscriminatory reason, *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079,

1088 (11th Cir. 2004). "When a plaintiff chooses to attack the veracity of the employer's proffered reason, the inquiry is limited to whether the employer gave an honest explanation of its behavior." *Kragor*, 702 F.3d at 1310–11 (internal quotation marks omitted). A *prima facie* case plus sufficient evidence of pretext may permit the factfinder to find unlawful discrimination, making summary judgment inappropriate. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). In determining whether the proffered reason is pretextual, courts are not in the "business of adjudging whether employment decisions are prudent or fair," but rather "whether unlawful discriminatory animus motivates a challenged employment decision." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999).

Prince has failed to present sufficient evidence to rebut Northport's claim that it promoted Hallman because he was more qualified than Prince. To successfully challenge an employer's explanation that it promoted the better qualified candidate, the plaintiff must show that "the disparities between the successful applicant's and his own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (per curiam) (quoting *Cooper v. S. Co.*, 390 F.3d 695,

732 (11th Cir. 2004), *overruled in part by Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006) (per curiam)); *see also Ash*, 546 U.S. at 457 (approving of this language from *Cooper*). Furthermore, the plaintiff cannot prove pretext by merely arguing or even showing that he was better qualified than the individual who received the promotion, rather, the plaintiff must show that the "defendant's employment decisions . . . were in fact motivated by race." *Springer*, 509 F.3d at 1349.

Here, Northport provided an honest explanation for its decision to promote Hallman, and Prince has not presented any evidence to suggest otherwise. Northport made a business decision to increase the technical qualifications for Traffic Technician II in an effort to reduce reliance on ALDOT for basic maintenance of traffic cabinets. To that effect, Starnes and Olive created neutral interview questions designed to test whether a candidate had the requisite electrical knowledge given the change in job requirements. Prince characterizes this decision as related to a "vague issue with ALDOT" and that "it just *sounds* like an excuse or pretext." (Doc. 22 at 26.) However, it is Prince's burden to demonstrate that Northport's legitimate, nondiscriminatory reasons were pretextual for discriminating against Prince because of his race. This Court is not tasked with the job of second-guessing Northport's business decisions. *See Damon*, 196 F.3d at 1361.

Prince argues that because Northport had never relied on these interview questions in the past, then reliance on the questions during his interview process was pretextual for discriminating against him because of his race. Additionally, Prince argues that because the interview was subjective, that the entire process is "called into question." (Doc. 22 at 26.) Neither argument is persuasive. Northport changed the technical requirements for the Traffic Technician II position, which was reflected in the interview questions. And, Northport continued to use the same set of interview questions in subsequent interviews for the same position. Prince has not provided any evidence to suggest that the interview questions were a vehicle for discrimination because of his race.

As to Prince's argument that subjective interview questions call the entire process into question, a subjective interview may be "a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Chapman v. AI Trans.*, 229 F.3d 1012, 1034 (11th Cir. 2000) (en banc). Here, Northport has articulated a clear and reasonably specific factual basis for asking interview questions as they were directly relevant to the candidates' ability to do the job. The fact that Prince thinks that the job could be completed without the requisite electrical knowledge is insufficient to create a question for a jury to resolve regarding Northport's

discriminatory intent. *See Alvarez*, 610 F.3d at 1265–66 (A plaintiff "cannot succeed by simply quarreling with the wisdom of [the defendant's] reason." (quoting *Chapman*, 229 F.3d at 1030)).

Prince also asserts that Northport's reasons for failing to promote him to the position of Traffic Technician II were inconsistent, and thus demonstrate pretext. Prince cites to Starnes's deposition testimony, in which she states that Hallman was selected because of his superior performance during the interview process. The parties also submitted different versions of the letter provided to Prince explaining why he was not selected for the open position. In both versions of the letter, Starnes states that Hallman was promoted instead of Prince because of his superior interview as well as his heightened level of electrical experience. These reasons are not inconsistent in that Hallman's level of electrical experience was apparent in the interview when he had to answer questions regarding his electrical knowledge. Thus, Starnes's deposition testimony in which she states Hallman was hired because of his superior interview is not inconsistent with the reasons provided in the letters to Prince.

Finally, Prince argues that Northport's reasons for promoting Hallman were pretextual because there had never been an African-American in the position of Traffic Technician II, and all of his interviewers were Caucasian. The fact that

Northport had never hired an African-American for the position of Traffic Technician II does not support an inference of intentional discrimination in that Prince has not provided any context for this assertion. "Anecdotal information is no substitute for a meaningful statistical analysis." *Howard v. BP Oil Co.*, 32 F.3d 520, 524 (11th Cir. 1994) (stating that in order for "statistical evidence of discriminatory intent" to be relevant, the plaintiff must "present evidence as to how many blacks applied and were rejected and evidence of the success rate of equally qualified white applicants"). Prince has not provided any evidence regarding the application and rejection rate of other African-American applicants; therefore, the fact that Northport had never hired an African-American for the Traffic Technician II position does not support an inference of intentional discrimination.

Thus, Prince is left with the fact that all of his interviewers were Caucasian to attempt to demonstrate that Northport's legitimate, nondiscriminatory reasons for hiring the better qualified applicant were pretextual for discriminating against Prince because of his race. This, standing alone, is insufficient to meet Prince's burden. In short, Prince has failed to show that no reasonable employer would have selected Hallman for the position over Prince. Accordingly, Prince has failed to demonstrate that Northport's reasons for failing to promote him were pretextual; therefore, Northport's motion is due to be granted on Prince's race discrimination claim.

## B. Age Discrimination

Prince also asserts that he was discriminated against based on age when he was denied a promotion to Traffic Technician II. The ADEA prohibits discrimination "against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Municipalities are considered employers under the ADEA, and thus may be subject to liability under the statute. *Id.* § 630(b). ADEA claims that rely upon circumstantial evidence are analyzed using the *McDonnell Douglas* burden-shifting framework. *See Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015). In order to establish a claim under the ADEA, the plaintiff must show that his age was the "but-for" cause of the adverse employment action. *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 176 (2009).

### 1. Prima Facie *Case*

To establish a *prima facie* case of age discrimination, the plaintiff must demonstrate: "(1) that he was a member of the protected group . . . between the ages of forty and seventy; (2) that he was subject to an adverse employment action; (3) that a substantially younger person filled the position that he sought . . . ; and (4) that he was qualified to do the job for which he was rejected." *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998).

It is undisputed that Prince is a member of the protected group, that he was subject to an adverse employment action, and that a substantially younger person filled the position for which Prince had applied. Again, Northport disputes whether Prince was qualified for the position of Traffic Technician II. However, for the same reasons discussed relative to Prince's race discrimination claim, Prince was qualified as he was permitted to apply for the position by Northport's Civil Service Board. As such Prince has established a *prima facie* case of discrimination.

### 2. *Legitimate, Nondiscriminatory Reason*

Having stated a *prima facie* case of discrimination, the burden then shifts back to Northport to provide a legitimate, nondiscriminatory reason for promoting Hallman instead of Prince. *Lewis*, 918 F.3d at 1221 (citing *Burdine*, 450 U.S. at 253). Northport's reasons for promoting Hallman over Prince are the same for Prince's age discrimination claim as his race discrimination claim. Thus, for the reasons previously discussed, Northport has met its burden of production and provided legitimate, nondiscriminatory reasons for promoting Hallman over Prince.

### 3. *Pretext*

As Northport has articulated a legitimate, nondiscriminatory reason for its decision, "the burden shifts back to the plaintiff to produce evidence that the

employer's proffered reason [is] a pretext for discrimination." *Alvarez*, 610 F.3d at 1264. Prince has presented no evidence to suggest that Northport's legitimate, nondiscriminatory reasons for failing to promote Prince were pretextual for discrimination because of Prince's age. Much of Prince's pretext argument is focused on his race discrimination claims, not his age discrimination claims. Prince has presented no discrete argument as to why Northport's reasons were pretextual regarding his age discrimination claim. In sum, Prince has not presented any evidence that his age was the but-for reason that he did receive the promotion to Traffic Technician II. Accordingly, Northport's motion is due to be granted on Prince's age discrimination claim.

V. **CONCLUSION**

For the reasons stated above, Defendant's Motion for Summary Judgment (doc. 16) is due to be granted. An order consistent with this opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on June 25, 2021.

L. Scott Coogler
United States District Judge

202892